**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JESSICA E.,

                           Plaintiff,                   No. 5:18-CV-543
                                                   (CFH)

      v.

ANDREW SAUL,[1]

                           Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Olinsky Law Group<br>300 S. State Street<br>Suite 420<br>Syracuse, New York 13202<br>Attorney for Plaintiff | HOWARD D. OLINKSY, ESQ. |
| Social Security Administration<br>Office of Regional General Counsel,<br>Region II<br>26 Federal Plaza, Rm. 3904<br>New York, New York 10278<br>Attorney for the Commissioner | MARIA P. FRAGASSI SANTANGELO, ESQ.<br>Special Assistant U.S. Attorney |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiff Jessica E. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability benefits and supplemental security income ("SSI")

_____

[1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

benefits. Dkt. No. 1 ("Compl.").[2] Plaintiff moves for a finding of disability or remand for

a further hearing, and the Commissioner cross moves for a judgment on the pleadings.

Dkt. Nos. 9, 10. For the following reasons, the determination of the Commissioner is

affirmed.

# I. Background

Plaintiff was born in 1982. T. 37.[3] At the time of the hearing, she lived her with

boyfriend and two children, ages thirteen and ten. Id. She had a driver's license, but

had not driven since 2014. Id. Plaintiff graduated from high school, and completed

"about a half year of college[.]" Id. at 38. She was last employed at a paper packing

plant, and previously worked as a picture framer, at a grocery store, and as a cashier at

a convenience store. Id. at 39-41.

On February 2, 2015, plaintiff protectively filed a Title II application for disability

benefits. T. 215-18. That same day, she also protectively filed a Title XVI application

for SSI benefits. Id. at 219-24. Plaintiff alleged a disability onset date of April 12, 2015.

Id. at 215-24. The applications were initially denied on April 10, 2015. Id. at 89-94.

Plaintiff requested a hearing, and a hearing was held on March 22, 2017 before

Administrative Law Judge ("ALJ") Jeremy Eldred. Id. at 32-66, 105-06. ALJ Eldred

issued an unfavorable decision on April 25, 2017. Id. at 15-23. On March 7, 2018, the

[2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 7.

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner.  Id. at 1-3.  Plaintiff commenced this action on May 7, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence,

such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992) (citation omitted).


## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit  . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available

to him or her based on his or her age, education, and work experience.  Id. §

423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical

and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the

impairments is "based [upon] objective medical facts, diagnoses or medical opinions

inferable from the facts, subjective complaints of pain or disability, and educational

background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB),

2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 12, 2014, the alleged onset date. T. 17. The ALJ found at step two that plaintiff had the severe impairment of epilepsy. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 19. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels, but can never climb ladders, ropes, or scaffolds, can never work at unprotected heights or around moving mechanical parts, and can never operate a motor vehicle." Id. At step four, the ALJ found that plaintiff had the RFC to perform her past relevant work as a convenience store clerk. Id. at 22. The ALJ did not reach step five. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from April 12, 2013 through the date of this decision." Id.

## D. Arguments

Plaintiff argues that the ALJ improperly weighed the opinion evidence, which resulted in an RFC determination that was not supported by substantial evidence. Dkt. No. 9 at 13-17. Conversely, the Commissioner argues that the "ALJ properly evaluated the totality of the evidence of record, including medical source opinion evidence, in assessing the RFC[.]" Dkt. No. 10 at 16.

## F. Relevant Medical Evidence

### 1. Shahram Izadyar, M.D.

Dr. Shahram Izadyar wrote a letter dated January 30, 2015 stating that it was his "medical opinion that [plaintiff] due to her medical conditions (epilepsy, side effect from medications, anxiety, backpain) at this time is not able to work." T. 414.

On February 8, 2017, Dr. Izadyar completed a medical source statement concerning plaintiff's impairments. He diagnosed plaintiff with localization related epilepsy, and described her seizures as "complex partial seizures sometimes proceeding to a generalized tonic-clonic seizure." T. 484. Dr. Izadyar indicated that plaintiff's last generalized tonic clonic seizure was in 2014, but her "auras are less frequent now" and that they "may occur every few weeks." Id. He noted that plaintiff usually has a warning of an impending seizure, but could not always take safety precautions if she felt a seizure coming. Id. Dr. Izadyar indicated that plaintiff's seizures increased in frequency under stress. Id. He stated that plaintiff experienced confusion after a seizure, and sometimes bit her tongue, which could take days to heal. Id. Plaintiff did not have a history of injury during a seizure. Id. Dr. Izadyar indicated that plaintiff experienced dizziness and fatigue as side effects of her seizure medication. Id. at 485. He further noted that plaintiff's seizures would likely disrupt the work of her co-workers, and that she would need more supervision at work than an unimpaired worker. Id. Plaintiff's depression was associated with her seizure disorder. Id. Dr. Izadyar opined that would be off task 20 percent during an eight-hour workday, and her impairments would produce good days and bad days. Id. Dr. Izadyar further

opined that plaintiff would likely be absent from work about two to three days per month, but that her condition made it unpredictable. Id. He stated that plaintiff must avoid driving, use of heavy machinery, climbing, heights, and extreme temperatures. Id.

### 2. Dennis Noia, Ph.D.

Dr. Dennis Noia met with plaintiff for a psychiatric consultative examination on April 2, 2015. Plaintiff indicated that she had difficulty falling asleep and usually woke up two or three times per night. T. 401. She stated that her appetite had decreased. Id. She did not report significant manic related symptoms, or symptoms of a formal thought disorder or cognitive dysfunction. Id. Plaintiff admitted to symptoms of depression and anxiety, including dysphoric moods, psychomotor retardation, crying spells, feelings or guilt, hopelessness, loss of usual interests, irritability and anger, fatigue and loss of energy, diminished self esteem, problems with memory, problems with concentration, diminished sense of pleasure, restlessness, excessive worry, and fearfulness. Id.

Dr. Noia noted that plaintiff's demeanor and responsiveness to questions was cooperative. T. 401. Plaintiff's manner of relating, social skills, and overall presentation was adequate. Id. She appeared her stated age and was appropriately dressed. Id. at 402. Her speech intelligibility was fluent, and the quality of her voice was clear. Id. Her expressive and receptive language was adequate. Id. Plaintiff's thought processes were coherent and goal directed. Id. Plaintiff's affect was constricted and was

somewhat reduced in intensity compared to her thoughts and speech.  Id.  Plaintiff's mood was depressed, and she appeared sad and tearful throughout the examination. Id.  Dr. Noia indicated that "[s]ocially, [plaintiff had] been having difficulty getting along with friends and family."  Id.

Dr. Noia opined that, vocationally, plaintiff had no limitations in understanding and follow simple directions; performing simple or complex tasks; maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; learning new tasks; and making appropriate decisions.  T. 403.  Plaintiff appeared to be able to relate to and interact moderately well with others.  Id.  Dr. Noia opined that she had mild to moderate limitations regarding her ability to deal with stress.  Id.  He diagnosed plaintiff with unspecified depressive disorder, unspecified anxiety disorder, seizure disorder, and intermittent back pain.  Id.  Dr. Noia indicated that plaintiff's prognosis was "fair," and that "with continued intervention and support, she [could] find symptom relief and maximize her abilities."  Id.

### 3. Elke Lorensen, M.D.

On April 2, 2015, Dr. Elke Lorensen conducted a neurological consultative examination.  T. 405.  Plaintiff reported complaints of seizures and back pain.  Id. Plaintiff indicated that most of her seizures were "just an aura, but sometimes she ha[d] grand mal seizures as well."  Id.  Dr. Lorensen failed to identify any "gross physical limitations . . . on he basis of [the] examination."  Id. at 407.  Plaintiff's neurological examination was "basically normal," and Dr. Lorensen noted "only mild difficulty walking

on heels and toes[.]" Id.  Dr. Lorensen also noted that plaintiff should avoid heights and operating machinery.  Id.


### 4. Jay Chapman, M.D.

Dr. Jay Chapman completed a Medical Source Statement dated February 24, 2017.  Dr. Chapman indicated that he had been treating plaintiff since 2011.  T. 487. He noted that plaintiff's diagnosis was seizure disorder – grand mal and aura.  Id. Plaintiff had not had a grand mal seizure in two years, but she had "ongoing auras" about every two months.  Id.  Dr. Chapman stated that plaintiff suffered from lumbar radicular pain with nerve root compression and sciatica.  Id.  He indicated that the neuro-anatomic distribution of pain occurred "down posterolateral upper legs to above knees more on descent than ascent."  Id.  He noted that plaintiff could walk on her heels with balance help, and would require help rising from a squatting position.  Id.

Dr. Chapman opined that plaintiff could sit for ten minutes and stand for fifteen to twenty minutes at one time before needing to get up.  T. 488-89.  Plaintiff could sit and stand/walk for less than two hours total in an eight-hour workday with normal breaks. Id. at 489.  Dr. Chapman indicated that plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking.  Id.  He opined that plaintiff could frequently lift less than ten pounds; occasionally life ten pounds, rarely lift twenty pounds; and never lift fifty pounds.  Id.  Plaintiff could rarely twist or climb stairs, and never stoop/bend; crouch/squat; or climb ladders.  Id.  Plaintiff could occasionally look down, turn her head left or right, look up, and hold her head in a static position.  Id.

10

She could occasionally grasp turn twist objects with her hands, execute fine manipulations with her fingers, and reach her arms overhead. Id. at 490. Dr. Chapman indicated that plaintiff would sometimes need to take unscheduled breaks four times an hour for five minutes and would be off task more than twenty percent of the work day. Id. Plaintiff would also likely be absent from work for more than four days per month. Id. Dr. Chapman indicated that plaintiff should avoid extreme temperatures, wetness, humidity, noise, and dust. Id.

### F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much

weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from

12

both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

In determining that plaintiff could "perform a full range of work at all exertional levels, but can never climb ladders, ropes, or scaffolds, can never work at unprotected heights or around moving mechanical parts, and can never operate a motor vehicle," T. 19, the ALJ afforded "great weight" to Dr. Lorensen's medical opinion because "it was rendered after a thorough examination of [plaintiff] by a physician with extensive

program and professional experience" and was "generally consistent with the objective record as a whole." T. 21. Dr. Lorensen failed to find any "gross physical imitations on the basis of [the] examination," and indicated that plaintiff's neurological examination was "basically normal." Id. at 407. Dr. Lorensen further observed that plaintiff had "mild difficulty walking on [her] heels and toes," and, based on that observation, opined that she should avoid heights and operating machinery. Id. Such findings are supported by Dr. Lorensen's examination, wherein he found generally normal physical and neurological results, including normal gait, station, and range of motion in her cervical, thoracic, and lumbar spine; the ability to tandem walk heel-to-toe; and lack of tenderness or muscle spasm, as well as appropriate eye contact; orientation to time, person, and place; no evidence of delusions; and lack of recent or remote memory impairment. Id. at 406-07.

As the Commissioner notes, Dr. Lorensen's medical opinion is also consistent with the findings and opinions of plaintiff's other treating and examining sources. Dkt. No. 10 at 18. Plaintiff's medical records demonstrate unremarkable brain scans, MRIs, and EEGS in April 2013, June 2013, and August 2013, respectively, as well as generally normal physical and neurological findings. T. 364, 381-82, 385-86, 388, 392, 424-25, 462, 467-68, 473, 479-80, 489; see Dkt. No. 10 at 18. Moreover, to the extent that plaintiff continued to suffer seizures, her medical records show that they were generally well-controlled with medication. See T. 394 (noting in September 2014: "She had frequent auras consisting of nausea, dizziness and feeling hot, which are significantly better controlled now after start of OXC (Oxcarbazepine)."), 463 (noting in

14

January 2015: "She had frequent episodes of aura of which are significantly better controlled now after the start of OXC (Oxcarbazepine), however she continues to have episodes of dizziness and feeling hot which she thinks are stress related."), 469 (noting in July 2015 that plaintiff's condition was "stable" with medications).  In addition, plaintiff had not experienced a seizure since June 2014.  See id. at 463.  The Court also notes that in a July 2016 appointment, Dr. Izadyar indicated that plaintiff was "[o]verall, . . . doing very well," and that her auras and epilepsy continued to be controlled by medication.  Id. at 481; see Dkt. No. 10 at 18.  Such notation was consistent with Dr. Izadyar's February 2017 medical source statement wherein he noted that plaintiff's auras were "less frequent now" and "may occur every few weeks."  T. 484.

In that vein, the ALJ afforded "great weight" to Dr. Izadyar's medical opinion that plaintiff should not drive, climb heights, or use heavy machinery and incorporated those limitations into the RFC determination.  T. 21 (citing id. at 485).  The Court finds Dr. Izadyar's opinion consistent with his treatment records, wherein he indicated on numerous occasions that plaintiff should avoid driving, climbing heights, and use of heavy machinery.  Id. at 394, 464, 470, 482.  To the extent that plaintiff argues that the ALJ erred in granting "little weight" to Dr. Izadyar's opinion that plaintiff was unable to work, and that she would be off task for 20 percent of an eight-hour workday and absent from work two or three days per month, the undersigned disagrees.  See Dkt. No. 9 at 14-15.  Regarding Dr. Izadyar's January 2015 statements that plaintiff was unable to work,  the ALJ was not required to afford any deference to such statements — particularly where, as here, they were not supported by the evidence — because the

15

issue of whether a claimant is disabled is an issue reserved to the Commissioner.  See

Mortise v. Astrue, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning

the ultimate issue of disability, from any source, is reserved to the commissioner.");

Fuimo v. Colvin, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) ("It was proper to give little

weight to [Dr. Russell's] opinion, which concerned issues reserved to the

Commissioner," where the opinion in question consisted of statements that the plaintiff

was severely disabled and not competitively unemployable) (citing 20 C.F.R. § 416.

927(d)(1)).  As such, the ALJ did not err in granting "little weight" to that opinion.

 Further, the Court concludes that the ALJ properly granted "little weight" to Dr.

Izadyar's opinion that plaintiff would be off task 20 percent of the day and miss two or

three days of work.  In making that determination, the ALJ reasoned that "the limitations

[were] not consistent with the brief nature of the [plaintiff's] auras, her high level of daily

activity, or the fact that she ha[d] not had a seizure in over two years."  T. 21.  The

Court finds such determination is supported by substantial evidence.  Although "it is

well-settled that the performance of basic daily activities does not necessarily contradict

allegations of disability, as people should not be penalized for enduring the pain of their

disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No.

3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal

quotations omitted), the Court concludes that the ALJ did not err in relying on plaintiff's

ability to perform activities in discounting Dr. Izadyar's opinion.  As the ALJ described,

plaintiff "described daily activities that are not limited to the extent one would expect

given her complaints of disabling symptoms."  T. 21.  Plaintiff testified that she took

16

care of her children, cleaned, washed laundry, cooked, took care of her pets, and shopped.  Id. at 47-48, 51.  During a typical day, plaintiff indicated that she got her children ready for school, cooked for them and cleaned up after them, helped them with their homework, and performed other chores.  Id.; see id. at 272-76, 402, 406.  Plaintiff's testimony and self-reporting, in addition to the medical evidence described above, are consistent with the ALJ's finding that plaintiff could "perform a full range of work at all exertional levels" with some limitations.  Id. at 19.  Thus, the ALJ's reliance, in part, on plaintiff's activities of daily living was not in error.  See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations.  Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Moreover, substantial evidence supports the ALJ's finding that Dr. Izadyar's opinion concerning plaintiff's alleged absences and ability to be off task was inconsistent with the "brief nature" of plaintiff's auras and the lack of reoccurring seizures.  See T. 21.  Plaintiff testified that because of her medication she had not suffered a seizure since 2014.  Id. at 42.  Plaintiff further stated that she used to suffer from auras "every-other-day" but that decreased to "a couple times a month," and that the auras had "gotten better."  Id. at 43.  Plaintiff testified that the auras "used to be like 20 seconds, 30 seconds" but that they had "weakened[ to] maybe 5-10 seconds," and if she stayed "real still" they "usually passe[d]."  Id.  Plaintiff's testimony was consistent with her medical records, which demonstrated that in July 2016, plaintiff's auras had

"reduced in frequency since increasing the dose of OXC (Oxcarbazepine) in November 2015" and that she had not suffered an aura since March. Id. at 477.

Dr. Izadyar's off task and absence limitations are also inconsistent with Dr. Noia's psychiatric consultative examination, wherein Dr. Noia indicated that, vocationally, plaintiff had no limitations in understanding and follow simple directions; performing simple or complex tasks; maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; learning new tasks; and making appropriate decisions. Id. at 403. She appeared to be able to relate to and interact moderately well with others. Id. As the Commissioner notes, the ALJ further relied on Dr. Noia's opinion in determining that plaintiff's anxiety and depression were not severe impairments. See Dkt. No. 10 at 23 (citing T. 18-19). Thus, to the extent that plaintiff argues that the ALJ failed to provide good reasons for discounting Dr. Izadyar's opinion, the Court disagrees and finds that the ALJ's determination was supported by substantial evidence. See Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing Stevens v. Barnhart, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007) ); Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is

18

entitled).  As such, the ALJ was within his discretion to fail to adopt any limitations concerning plaintiff's alleged monthly absences and ability to be off task.

Insofar as plaintiff argues that the ALJ erred in failing to adopt Dr. Noia's stress limitations, the Court disagrees for the reasons set forth in the Commissioner's brief.  In discrediting Dr. Noia's opinion that plaintiff suffered from mild to moderate limitations in her ability to handle stress, the ALJ noted that such limitation was "contradicted by reports from [plaintiff's] treating source, which indicate that [plaintiff's] stress is well managed."  T. 19.  Indeed, plaintiff's medical records show that in July 2016, her "anxiety and depression [were] under good control and her stress [was] well managed." Id. at 477.   It was within the ALJ's discretion to weigh the evidence concerning plaintiff's stress limitations and make a RFC determination that was consistent with the evidence as a whole.  See Bliss v. Colvin, No. 3:13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); White v. Colvin, No. 6:13-CV-0084, 2014 WL 1311993, at *7 (N.D.N.Y. Mar. 31, 2014) ("[I]t is the ALJ's job to properly evaluate the evidence and reconcile any apparent inconsistencies."); Petell v. Comm'r of Soc. Sec., No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (noting that the ALJ is "free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions"); see also Winder v. Berryhill, 369 F. Supp. 3d 450, 457 (E.D.N.Y.

2019) ("Although, the Court is generally required to defer to the medical opinion of a treating physician, those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts.") (citation omitted).

It is well-settled that it is not improper for an ALJ to adopt only a portion of a medical source's opinion; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Thus, based on the record as a whole, as discussed above, the Court concludes that the ALJ's decision to discount certain portions of Dr. Izadyar's opinion was supported by substantial evidence. See Dierdre R. v. Comm'r of Soc. Sec., No. 5:17-CV-0395 (TWD), 2018 WL 4565769, at *8 (N.D.N.Y. Sept. 24, 2018) (concluding that the ALJ did not err in discounting the consultative examiner's opinion that the plaintiff had moderate to marked limitations reaching where the record gleaned generally unremarkable findings); Babcock v. Berryhill, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching); Disotell v. Comm'r of Soc. Sec., No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *5 (N.D.N.Y. Aug. 14, 2017) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had marked limitations in reaching).

20

The Court notes that the ALJ also properly granted "little weight" to Dr. Chapman's opinion for many of the same reasons outlined above. With regard to the off task and absence recommendation, in granting Dr. Chapman's opinion "little weight," the ALJ reasoned that the opinion was "inconsistent with [plaintiff's] high level of daily activity and the passage of time since [plaintiff's] last seizure." T. 22. Moreover, as the Commissioner notes, Dr. Chapman's opinion that plaintiff could sit, stand, and walk for less than two hours total in an eight-hour workday with normal breaks; could only lift and carry up to ten pounds occasionally and twenty pounds rarely; rarely twist or climb stairs rarely twist or climb stairs, and never stoop/bend, crouch/squat, or climb ladders; and could occasionally look down, turn her head left or right, look up, and hold her head in a static position was inconsistent with Dr. Chapman's own treatment notes. See T. 489; Dkt. No. 10 at 23. As the Commissioner indicates, Dr. Chapman assessed generally normal clinical observations including normal gait and stance; a musculoskeletal system without physical disability; normal muscle tone, motor strength, and sensation; and intact range of motion bilaterally. T. 364, 388-89, 424-25. As such, the Court concludes that the ALJ provided good reasons for discounting Dr. Chapman's opinion.

To the extent that plaintiff argues that the ALJ mischaracterized a statement by Dr. Hyun Joo Cho linking plaintiff's continued auras and missing her medication, the Court finds plaintiff's argument misplaced. In a June 2016 medical record, Dr. Cho indicated that "[s]ince [the auras] happen only when she misses doses of Keppra, we will not change the dose for now." T. 449. In his decision, the ALJ noted that "[w]hile the claimant has complained of continued aura, she testified that these spells occur only

a couple of times per month, and last only a few minutes.  In addition, her treating source reported that these incidents only happen when she misses a dose of her medication."  Id. at 20.  Even if the ALJ mischaracterized Dr. Cho's statement, substantial evidence exists in the record demonstrating that plaintiff's medication regimen improved her auras so much so that she testified that her auras decreased from every other day for twenty to thirty seconds to "a couple times a month" lasting at most ten seconds.  Id. at 43.  As stated, plaintiff's testimony is consistent with her medical records, which indicate that in July 2016, plaintiff's auras had "reduced in frequency since increasing the dose of OXC (Oxcarbazepine) in November 2015" and that she had not suffered an aura since March.  Id. at 477.  Thus, assuming that the ALJ did mischaracterize Dr. Cho's statement, it amounts to harmless error.

Finally, the Court agrees with the Commissioner that the record does not support a conclusion that plaintiff should have been restricted to unskilled work.  Dkt. No. 10 at 26 (citing Dkt. No. 9 at 16).  The ALJ declined to find plaintiff's depression and anxiety severe impairments at step two, largely based on the medical opinions of Dr. Noia and the state agency psychologist R. Nobel, who found no more than mild functional limitations, as well as plaintiff's lack of mental health treatment.  See T. 18-19, 74.

The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  See Bliss, 2015 WL 457643, at *7.  "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"  Camarata v. Colvin, No.

14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting <u>Galiotti v.</u>

<u>Astrue</u>, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  It is clear from the ALJ's

overall decision that he appropriately considered the evidence before him, including the

opinions of record and plaintiff's medical records.

As such, the Court's review of the ALJ's overall decision indicates that he properly

reviewed the evidence of record and provided sufficient explanation for his analysis.  For

the reasons above, the Court therefore finds that the ALJ's RFC determination (including

his analysis of the opinion evidence) and overall finding that plaintiff is not disabled are

supported by substantial evidence.  Remand is not appropriate.


### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Jessica E.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt.

No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-

Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 12, 2019
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge